## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| Cheryl Feder, | ) |
|     Plaintiff, | ) Case No.: 1:18-cv-00274 |
| vs. | ) Judge Michael R. Barrett |
| SB2, Inc. et al., | ) |
|     Defendants. | ) |

## OPINION & ORDER

This matter is before the Court on the Motion to Dismiss of Defendants SB2, Inc. and Jennifer Coy. (Doc. 7). Plaintiff[1] filed a Response in Opposition (Doc. 8) and Defendants filed a Reply (Doc. 9).

### I.  BACKGROUND[2]

On November 4, 2015, Plaintiff was admitted to Eastgatespring of Cincinnati, a nursing home, for care and assistance. (Doc. 4, PageID 67) (stating Plaintiff was admitted on or about November 4, 2015). *But see* (Doc. 4-1, PageID 79) (stating Plaintiff's "Original move-in date" was "2-22-2016"). She was subsequently discharged and readmitted to the same nursing home on or around April 20, 2016. (Doc. 4, PageID 67). She suffered from asthma and fluid on her heart, was unable to walk, and reliant on both a wheelchair and

---

[1] Plaintiff Audrey Feder died during the pendency of this litigation (Doc. 12) and, with the Court's permission, Cheryl Feder, the acting trustee of her estate, has been substituted as Plaintiff (Doc. 14). For purposes of this Order, and to maintain uniformity with the parties' filings, the Court will refer to "Plaintiff" as referencing Audrey Feder.

[2] The following facts are alleged in the Complaint (Doc. 4) and its exhibits (Doc. 4-1). The Court declines consideration of the exhibits attached to Plaintiff's Response in Opposition. *See* FED. R. CIV. P. 12(d) (providing that if, in a 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

oxygen. *Id.* When she was readmitted to the nursing home, she signed expedited move-in process paperwork ("the Agreement") in which she acknowledged that,

> [t]he last time that you were admitted to Eastgatespring of Cincinnati, you reviewed numerous documents that contained the policies and procedures of the center and in which you stated certain preferences to us. At that time you signed numerous documents to indicate that you understood their contents and to acknowledge their receipt. We have listed below all of the documents that you received during your original move-in to the center in addition to the residency agreement. If you agree to abide by all of terms outlined in the policies below, and if the information provided to us in those forms has not changed since your last move-in, then you may sign below to indicate that fact.

(Doc. 4-1, Ex. A, PageID 79). Plaintiff signed the Agreement as the "Resident," Cheryl Feder signed the Agreement as "the Representative," and a representative from Eastgatespring signed for the nursing home. (*Id.*, PageID 80-81).

As the Representative, Cheryl Feder expressly declined to *voluntarily* personally guarantee payment to Eastgatespring, be jointly and severally liable for all services and supplies received by her mother, and make all payments for her mother. (*Id.*, PageID 82). As the Representative, Cheryl Feder also agreed to cooperate in the Medicaid Process. (*Id.*, PageID 84-85). In that regard, she agreed that she

> [s]hall cooperate fully in any application, redetermination or appeals process related to Medicaid eligibility. The Representative agrees to pay from his/her own resources any unpaid charges due to Eastgatespring of Cincinnati as a result of the Representative's failure to cooperate in the Medicaid eligibility or determination process, or appeals thereto. "Failure to cooperate" shall include, but is not limited to, failing to provide documentation to the Medicaid agency in the time frames defined by law or as indicated by the relevant representative to the Medicaid agency.

*Id.*

As the Resident and Representative, Audrey and Cheryl Feder agreed, inter alia: to pay all charges and fees billed by Eastgatespring; that they would remain responsible

for any charges that are not paid for by a governmental payer (*e.g.*, Medicare or Medicaid); and that, if Eastgatespring retained the services of a collection agency or an attorney to obtain the payment of amounts due under the Agreement, Eastgatespring shall be entitled to recover from them all collection agency and attorney's fees, court costs and other collection expense. (*Id.*, PageID 83). Additionally, Audrey Feder and Cheryl Feder signed an agreement to resolve legal disputes, including breaches of contract, through arbitration but the Eastgatespring representative did not so sign. (*Id.*, PageID 89-90).

Sometime during her stay following her readmittance to Eastgatespring, Plaintiff applied for Medicaid with Eastgatespring's assistance, but that application was later denied.[3] (Doc. 4, PageID 67).

On March 13, 2017, Eastgatespring filed a complaint for equitable relief and motion for preliminary injunction in the Clermont County, Ohio Court of Common Pleas. (Doc. 4-1, PageID 72-90, 91-110). Defendant Jennifer Coy, an attorney, working for Defendant SB2, Inc., a law firm, represented Eastgatespring in that lawsuit. *Id.* In the complaint, Eastgatespring stated that Plaintiff entered in a Resident Admission Agreement on November 4, 2015 and, in doing so, agreed to compensate Eastgatespring for all care provided including, if necessary, pursuing Medicaid eligibility and payment of her social security income, less the exempt $50.00 personal allowance. (Doc. 4-1, PageID 74). Eastgatespring also stated that Plaintiff's account was delinquent in the amount of

---

[3] The parties disagree as to why Plaintiff's Medicaid application was denied. Plaintiff asserts that it was denied because she was unable to get the appropriate documentation necessary to process the application due to her physical conditions (Doc. 4, PageID 67), whereas Defendants assert that her application was denied, in part, because she refused to liquidate her resources to become financially eligible for Medicaid (Doc. 4-1, PageID 73).

$111,000.00 as of January 11, 2017, that she refused to spend down her resources to become eligible for Medicaid or pay her balance, and that it attempted to discharge her pursuant to Ohio law, but it was unable to do so until it could find a replacement location to transfer her to. (*Id.*, PageID 73-74). Eastgatespring brought a claim of breach of contract arguing that the November 4, 2015 Resident Admission Agreement constitutes a valid contract under which Eastgatespring performed its duties, but Plaintiff did not. *Id.* Eastgatespring also brought a claim of unjust enrichment arguing that Plaintiff is being enriched by her failure to pay her balance and comply with the Medicaid process. (*Id.*, PageID 75).

Eastgatespring requested relief in the form of specific performance of the November 4, 2015 Resident Admission Agreement. *Id.* It requested that the court (1) compel Plaintiff to cooperate in the Medicaid Application/Spend-down process or, alternatively, designate it as her Limited Power-of-Attorney or Guardian Ad Litem to assist her in that process; (2) compel her to turn over and remit to it any financial resources identified in the Medicaid denial letter as preventing her from Medicaid eligibility; and (3) compel her to designate it as payee of her social security income (if she received any) in satisfaction of her balance. (*Id.*, PageID 75-76). Eastgatespring attached the April 2016 expedited move-in process paperwork to the complaint and not the November 2015 Resident Admission Agreement. (*Id.*, PageID 79-90).

In the motion for preliminary injunction, Eastgatespring moved for the court to order Plaintiff to (1) cooperate with the Medicaid Application/Spend-down process; (2) turn over and remit to Eastgatespring any financial resources identified in the Medicaid denial letter as preventing her from Medicaid eligibility; and (3) designate Eastgatespring as a

representative payee of her social security income in satisfaction of her balance. (Doc. 4-1, PageID 91-110). Eastgatespring attached the April 2016 expedited move-in process paperwork to the motion and not the November 2015 Resident Admission Agreement. *Id.*

On April 6, 2017, Plaintiff was discharged from Eastgatespring to Montgomery Care Center. (Doc. 4, PageID 67).

On April 24, 2017, Eastgatespring, via Defendants, filed a motion for default judgment in the state court case. (Doc. 4-1, PageID 111-17). Eastgatespring stated that: Plaintiff lived at the nursing home since November 4, 2015; she currently resided there; and she was, in effect, stealing medical care and assistance because she refused to liquidate her resources and/or pay her outstanding balance. (*Id.*, PageID 112). Eastgatespring sought an entry of default, without a hearing, and for the court to order: (1) Plaintiff to provide any verification, information, or documentation necessary to qualify her for Medicaid benefits to either Eastgatespring or the Clermont County Department of Job and Family Services ("CDJFS") within five days of the entry of default judgment; (2) Plaintiff to provide any verification, information, or documentation necessary to qualify her for Medicaid benefits to Eastgatespring or CDJFS within five days of any further requests for Medicaid verification, information or documentation by CDJFS; (3) Plaintiff to turn over all financial resources to Eastgatespring that render her over resources for Medicaid to pay for the medical care and assistance she has received at Eastgatespring, including, but not limited to, the proper spend-down of any of her excess resources in accordance with applicable Medicaid regulations; (4) that Plaintiff's failure to provide information within five days would be deemed contempt of the requested court order; and (5) Eastgatespring be appointed as Plaintiff's Medicaid Authorized Representative in

conformity with federal statutes for the purposes of filing a Medicaid application and pursuing Medicaid benefits on her behalf. (*Id.*, PageID 115-16). It does not appear that Eastgatespring attached any documentation to the motion for default judgment.

On April 20, 2018, Plaintiff filed a request to proceed *in forma pauperis* ("IFP") in this Court and attached her Complaint and exhibits to that request. (Docs. 1, 1-1). On May 1, 2018, the Court granted Plaintiff's request to proceed IFP (Doc. 3) and her Complaint with corresponding exhibits were docketed the same day (Docs. 4, 4-1). In her Complaint, Plaintiff brings two claims: violations of the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). (Doc. 4).

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). When reviewing a 12(b)(6) motion, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *RMI Titanium Co.*, 78 F.3d at 1134 ("The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail."). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The Fair Debt Collection Practices Act

Congress enacted the FDCPA to eliminate abusive, deceptive, and unfair debt collection practices by regulating the collection methods that "debt collectors"[4] can use. 15 U.S.C. § 1692; *see Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 301 (6th Cir. 2008). The FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. It also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. The FDCPA lists conduct prohibited by Sections 1692d, 1692e, and 1692f. *See id.* § 1692d(1-6), § 1692e(1)-(16), § 1692f(1)-(8).

Defendants argue that Plaintiff's FDCPA claim is time-barred by the FDCPA's one-year statute of limitations and that the statute of limitations is not subject to tolling. (Doc. 7, PageID 131-32); (Doc. 9, PageID 279-87). They assert that the date of the alleged FDCPA violation is March 13, 2017, when they filed the state court complaint, and

---

[4] For purposes of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6).

7

because Plaintiff filed her Complaint in this case on May 1, 2018, her FDCPA claim is untimely. *Id.* Plaintiff responds that the FDCPA's statute of limitations is subject to tolling when a party files a request to proceed IFP and the date of the alleged FDCPA violation is properly determined when she was served with the state court document, not the filing of that document. (Doc. 8, PageID 160-63). She alternatively argues that, even assuming that the state court complaint was served more than one year prior to the filing of this case, Defendants' filing of the April 24, 2017 state court motion for default judgment is a separate FDCPA violation and, because she filed her Complaint in this case with her request to proceed IFP on April 20, 2018, this action is timely. *Id.*

### i. Tolling

The FDCPA has a one-year limitations period: "[a]n action to enforce any liability created by th[e FDCPA] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Nevertheless, a request to proceed IFP tolls the statute of limitations. *Craig v. Meyers*, No. C-1-09-31, 2009 WL 3418685, at *3 (S.D. Ohio Oct. 19, 2009) (citing *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004)). *But see Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (stating that the court need not determine whether the FDCPA permits equitable tolling at that time).

Plaintiff filed her request to proceed IFP, and the Court received her Complaint with corresponding exhibits with that request, on April 20, 2018. (Docs. 1, 1-1). Her Complaint is thus deemed filed on April 20, 2018, irrespective of the fact that the Court did not grant her request to proceed IFP until two weeks later. *See Craig*, 2009 WL

3418685 at *3. Accordingly, any FDCPA claim that arose within one year of April 20, 2018 is timely.

### ii. Filing of state court suit versus service of state court suit

The FDCPA applies to litigation activities of lawyers. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *Stratton v. Portfolio Recovery Assocs.*, LLC, 770 F.3d 443, 449 (6th Cir. 2014), *as amended* (Dec. 11, 2014). When deciding an alleged FDCPA violation regarding litigation activities, the difficult question is whether an actionable violation occurs at the filing of the state court complaint or at the time the debtor is served with the state court complaint. *See Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 463 (6th Cir. 2013). In fact, there is a Circuit split regarding whether the FDCPA statute of limitations begins to run when allegedly improper lawsuit is filed in state court or when the defendant is served with that lawsuit. *Cain v. Thompson*, No. 3:19-CV-00181-GNS, 2020 WL 42897, at *3, n.5 (W.D. Ky. Jan. 3, 2020) (citing *Ruth*, 604 F.3d at 914); *see Langendorfer v. Kaufman*, No. 1:10-CV-00797, 2011 WL 3682775, at *2 (S.D. Ohio Aug. 23, 2011) ("it is clear to this Court that other courts have come to different conclusions as to whether the FDCPA statute of limitations is triggered by the filing of the debt collection action or the service of such action"). "This Court has previously dealt directly with this issue and found that, although some courts from other jurisdictions have come to differing conclusions on the issue, . . . the FDCPA statute of limitations begins to run at the time of service [of the state court complaint]." *Duffey v. Pope*, No. 2:11-CV-16, 2012 WL 4442753, at *8 (S.D. Ohio Sept. 25, 2012) (citing *Langendorfer*, 2011 WL 3682775, at *2-3).

The Clermont County Court of Common Pleas' docket reflects that service of process of the state court complaint was effective on March 21, 2017. *See*

https://commonpleas.clermontclerk.org/eservices/home.page.2; 2017 CVH 00314 *Carespring vs. Feder, Audrey* JRM; *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (On a Rule 12(b)(6) motion, a district court "may consider . . . public records . . . so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment.") (internal quotation and citation omitted). Defendants filed the state court complaint on March 13, 2017, and service on Plaintiff was complete on March 21, 2017. Plaintiff did not file her Complaint in this Court until April 20, 2018. Thus, regardless of measuring from the date of filing or the date of service of the state court complaint, Plaintiff's FDCPA claim is untimely, as her FDCPA claim was filed outside of the one-year limitations period. *See* 15 U.S.C. § 1692k(d); *see also Duffey*, 2012 WL 4442753, at *8.

### iii. Plaintiff's "Continuing Violations" Theory

Plaintiff next argues that Defendants' filing of the motion for default judgment in state court on April 24, 2017 is a distinct FDCPA violation that, in effect, "refreshed" the statute of limitations for her FDCPA claim. Defendants respond that the filing of a motion for default judgment is not a discrete FDCPA violation, rather it is simply the pursuit of litigation, and her FDCPA claim remains time-barred. The question for the Court, then, is whether Defendants' filing of the state court motion for default judgment constitutes an independent violation of the FDCPA within the limitations period or a later effect of an earlier time-barred violation. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014) (citing *Purnell*, 303 F. App'x at 301-02)).

In *Slorp*, the U.S. Court of Appeals for the Sixth Circuit found that filing pleadings or memoranda reaffirming the legitimacy of the defendants' state-court suit were not

discrete violations of the FDCPA; rather, the filings "were the continuing effects of their initial violation," *i.e.*, the filing of an allegedly "unfair, misleading, and abusive" lawsuit against the plaintiff. *Malone v. Cavalry Portfolio Servs., LLC*, No. 3:14-CV-00428-CRS, 2015 WL 7571881, at *2 (W.D. Ky. Nov. 24, 2015) (quoting *Slorp*, 587 F. App'x at 259). "[I]nitiating a lawsuit—and all actions that litigating that suit entails—constitutes a single attempt to collect a debt." *Id.* Moreover, "[n]o court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA" and "[m]ost district court decisions have held that the continued prosecution of a collection suit is not a continuing violation under the FDCPA." *Slorp*, 587 F. App'x at 257, n.4.

In light of the above, the Court finds that Defendants' filing of the state court motion for default judgment does not constitute an FDCPA violation independent from the filing of the state court lawsuit. *See Slorp*, 587 F. App'x at 257. Accordingly, Plaintiff's FDCPA claim remains time-barred by the one-year statute of limitations and this matter must be dismissed. *See* 15 U.S.C. § 1692k(d). *Cf. In re Rice-Etherly*, 336 B.R. 308, 313 (Bankr. E.D. Mich. 2006) ("The statute of limitations [in the FDCPA] is a jurisdictional limitation placed on federal courts by Congress which courts are not at liberty to disregard.") (citation omitted) (internal quotation marks omitted).

### III. <u>Supplemental Jurisdiction</u>

Plaintiff also brings a claim under the OCSPA. (Doc. 4). However, as the Court finds that her FDCPA claim, the sole source of original jurisdiction, is untimely and should be dismissed, the Court declines to exercise supplemental jurisdiction over her state law claim and dismisses it without prejudice to refiling in state court. *See* 28 U.S.C.

§ 1367(c)(3) (noting that a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. 7) is **GRANTED**. This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

    **IT IS SO ORDERED.**

    _s/ Michael R. Barrett_____
    Michael R. Barrett, Judge
    United States District Court